IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRENDA THOMAS,

          Plaintiff,

vs.                              Case No. 11-1001-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On January 28, 2010, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 8-18). Plaintiff alleges that she has been disabled since September 22, 2006 (R. at 8). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 10). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 22, 2006, her alleged onset date (R. at 10). At step two, the ALJ found that plaintiff had the following severe

impairment: status post left hip replacement (R. at 10). The ALJ further determined that plaintiff's depression, ADD (attention deficit disorder), bilateral carpal tunnel syndrome and deep vein thrombosis (DVT) of the lower extremities were nonsevere impairments (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 12), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 16). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 16-17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17-18).

**III. Did the ALJ err in his consideration of the medical opinion evidence from Dr. Cook, plaintiff's treating surgeon?**

Dr. Scott Cook was plaintiff's treating surgeon who performed a left total hip arthroplasty on the plaintiff on September 22, 2006 (R. at 321, 397). On February 8, 2007, Dr. Cook released plaintiff to return to full work, with limitations of no repetitive squatting, stooping, bending, lifting over 50 pounds, or use of ladders (R. at 390). On August 7, 2008, Dr. Cook again stated that plaintiff was limited to no lifting over 50 pounds and no repetitive bending, stooping or squatting, and no work from ladders (R. at 492). On September 17, 2009, Dr. Cook lowered her lifting limitation to 40 pounds as lifting 50

pounds caused severe pain to the left hip (R. at 579).

The ALJ discussed the above opinions by Dr. Cook, and then stated the following regarding the weight to be accorded to these opinions by Dr. Cook:

> Great weight is given to the medical opinion of Dr. Scott Cook, MD, an orthopedist, as to claimant's work-related restrictions. Dr. Cook has continually assessed these restrictions based upon a full physical examination of the claimant, and a review of x-rays. Dr. Cook's restrictions are accepted as consistent with his own contemporaneous treatment notes, and medical evidence from other sources. [Ex. 31F]

(R. at 15).

Dr. David Jones was also a treating physician for the plaintiff.  On November 2, 2009, he filled out a medical source statement-physical indicating that plaintiff could stand and/or walk for 3 hours in an 8 hour workday, and sit for 4 hours in an 8 hour workday.  He also indicated that she could never climb, balance, stoop, crouch or crawl, must avoid all exposure to hazards and heights, and would need to lie down every ½ hour for 10 minutes due to pain (R. at 553-554).

The ALJ stated the following regarding these opinions by Dr. Jones:

> Little weight is given to the medical source statement completed by claimant's primary care physician, Dr. David Jones, on November 2, 2009. Dr. Jones' opinion that claimant's pain is "very limiting," and limits her to sitting and standing a combined 7 out of 8 hours, is not consistent with his own

>                    treatment notes, which contain relatively few
>                    pain complaints and no prescribed
>                    anti-inflammatory or pain-relieving
>                    medications since mid-2007. No explanation or
>                    examination supports this opinion. Likewise,
>                    no explanation is provided for the opinion
>                    that claimant needs to lie down every 30
>                    minutes. This limitation is not documented in
>                    the longitudinal treatment record. The
>                    "checkbox" response that claimant can "never
>                    balance" is similarly excessive since
>                    balancing is required to walk and stand. [Ex.
>                    28F]

(R. at 15-16).

The record also contains a medical source statement-physical from Dr. Cook, dated November 17, 2009.  It states that plaintiff can stand and/or walk for 3 hours in an 8 hour workday, and can sit for 4 hours in an 8 hour workday.  It states that plaintiff can never climb, stoop, crouch or crawl, and also indicates that plaintiff need to lie down for 30 minutes as needed due to pain (R. at 575-576).  The ALJ never mentioned this assessment by Dr. Cook.  This was the only report or statement from Dr. Cook which addressed the issue of whether plaintiff had any limitations regarding sitting, standing, and/or walking, or whether she needed to lie down on occasion.

In her decision, the ALJ expressly stated that Dr. Cook "continued to see claimant on a yearly basis with no subsequent restrictions placed on either walking or standing" (R. at 12).  This assertion is directly contradicted by Dr. Cook's RFC assessment of November 2009.

The ALJ stated that he was giving "great weight" to the opinions of Dr. Cook, plaintiff's treating surgeon, and found that his restrictions were consistent with his treatment notes and the medical evidence (R. at 15). However, inexplicably, the ALJ made no mention of Dr. Cook's medical source statement which limited plaintiff to sitting, standing, and walking for only 7 hours in an 8 hour workday, and also indicated that plaintiff would need to lie down as needed during the workday for 30 minute periods. According to SSR 96-8p, "If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted." SSR 96-8p, 1995 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate

every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). For these reasons, it is clear legal error to ignore a medical opinion. <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

Although an ALJ is not required to discuss every piece of evidence, the ALJ must discuss significantly probative evidence that he rejects. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Furthermore, the general principle that the ALJ is not required to discuss every piece of evidence does not control when an ALJ has opinion evidence from a medical source. In such a situation, the ALJ must make clear what weight he gave to that medical source opinion, and the reasons for that weight. <u>Knight v. Astrue</u>, 388 Fed. Appx. 768, 771 (10th Cir. July 21, 2010). In the case of <u>Martinez v. Astrue</u>, 2011 WL 1549517 at *5-6 (10th Cir. Apr. 26, 2011), the ALJ included in the claimant's RFC some, but not all, of the limitations found by an examining medical source. The ALJ simply ignored some of the limitations from the medical source. The court held that the ALJ erred by failing to include all of the limitations found by the medical source without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The court held that the ALJ may have had reasons for giving great

9

weight to some of the limitations set forth by the medical source, while rejecting other limitations.  However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations.  See also Lodwick v. Astrue, Case No. 10-1394-SAC (Dec. 13, 2011; Doc. 19 at 7-11)(ALJ erred when he gave "substantial weight" to medical source opinion, but, without explanation, did not include some of the limitations set forth by the medical source; court listed numerous cases with same ruling).

    The regulations and rulings set forth above clearly dictate that the ALJ must discuss all medical opinion evidence, particularly when the ALJ's findings conflict with those medical opinions.  The ALJ simply ignored the November 17, 2009 medical source statement from Dr. Cook, even though the ALJ stated that he was giving "great weight" to other opinions offered by Dr. Cook.  The court will not engage in the task of weighing this evidence in the first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998).  In Dr. Cook's statement of November 17, 2009, Dr. Cook opined that plaintiff could only sit, stand, and/or walk for 7 hours of an 8 hour workday, and needed to lie down as needed during the workday.  This opinion matches the opinion of Dr. David Jones that plaintiff can only sit, stand, and/or walk for 7 hours in an 8 hour workday, and is similar to the opinion of Dr.

Jones that plaintiff needs to lie down every ½ hour for 10 minutes.  No treating or examining source has stated that plaintiff can sit, stand, and/or walk for 8 hours in an 8 hour workday,[1] and the ALJ does not cite to any medical source opinion that states that plaintiff is able to sit, stand, and/or walk for 8 hours in an 8 hour workday.  The ALJ clearly erred by ignoring the opinions set forth in the November 17, 2009 report from Dr. Cook.

On remand, the ALJ must comply with SSR 96-8p, which states that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  Furthermore, on remand, the ALJ must not consider the opinions of these treating sources in isolation, but those opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in

---

[1] The record contains a consultative examination from Dr. Jaclyn Jones (as opposed to plaintiff's treating physician, Dr. David Jones) (R. at 528-530).  The ALJ accorded "significant" weight to her opinions (R. at 16).  Dr. Jaclyn Jones stated that plaintiff "walks normally" (R. at 529), and had no difficulty with heel and toe walking (R. at 530).  She also stated that plaintiff had no difficulty arising from the sitting position (R. at 530).  These were the only references in her report regarding sitting, standing or walking.  However, Dr. Jaclyn Jones never offered any opinions regarding how long plaintiff could sit, stand, and/or walk in an 8 hour workday.

particular, on the evaluation of reports and opinions of other treating sources, and the need for the ALJ to take this into consideration.  See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

As noted above, both Dr. Cook and Dr. David Jones limit plaintiff to only being able to sit, stand, and/or walk for 7 hours in an 8 hour workday.  Although the ALJ never mentioned this limitation in Dr. Cook's assessment, the ALJ did discuss this limitation in the assessment by Dr. David Jones, stating that such a limitation is not consistent with his treatment notes, and that no explanation or examination supports this opinion.  Because this case is being remanded because of the ALJ's failure to consider the November 2009 RFC assessment by Dr. Cook, on remand, the ALJ should consider SSR 96-5p, which states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6; see Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)(if the ALJ concluded that the treatment provider failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations,

or the effect of those limitations on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it).

**IV. Did the ALJ err in her consideration of plaintiff's mental impairments and/or limitations?**

On April 26, 2007, plaintiff underwent a psychological assessment by Dr. Kovach (R. at 431-433). Her report stated the following:

> <u>Ability to Work</u>: Based on the current exam, the client appears to have normal cognitive abilities with no significant deficits expect impaired concentration - most likely a combination of depression and ADD. She has a good job history and would like nothing better than to return to her last job, which is apparently medically contraindicated. However, this should be the judgment of the medical doctor. With continued treatment of depression and, if at all possible, ADD, she should be cognitively able to do some kind of work, though one has to consider that she has always done physical work and has 2 small children at home. When she had been working and making food money, she had paid $200.00 per week for childcare. She may benefit from vocational assessment and help to find at least part-time employment, if only to feel better about herself. Reliability, consistency, and ability to get along with others in the work place have never been problems.

(R. at 433). Following this report, a psychiatric review technique form was prepared by Dr. Cohen (R. at 434-446) which referenced the above report (R. at 446). Dr. Cohen found no severe mental impairment, with only mild difficulties in

maintaining concentration, persistence or pace (R. at 434, 444).

On April 15, 2009, plaintiff underwent a second psychological assessment by Dr. Kovach (R. at 524-526). Her report stated the following:

> <u>Ability to Work</u>: Based on her responses during this exam, the client's concentration is mildly to moderately impaired. Otherwise her cognitive abilities seem adequate for jobs of the kind she has held in the past. With medication for ADD she has had no significant problems at work, and depression had not kept her from working. She had always been a hard and conscientious worker, putting in lots of overtime. She is able to understand and follow simple instructions. Memory, judgment, and problem-solving are normal. Current motivation to work is limited only by her hip problem. Past history indicates good reliability as well as consistency and good ability to get along with others in the work place.

(R. at 526). Following this report, a psychiatric review technique form was prepared by Dr. Adams (R. at 532-544) which referenced both psychological assessments (R. at 544). Dr. Adams found no severe mental impairment, with only mild difficulties in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace (R. at 532, 542).

The ALJ considered each of these medical source opinions, and concluded that plaintiff had only mild restrictions with activities of daily living, social functioning, and maintaining attention, concentration or pace, with no episodes of

decompensation.  The ALJ concluded that plaintiff's depression and ADD (attention deficit disorder) were nonsevere impairments.  However, the ALJ stated that the extent to which these nonsevere impairments might limit her ability to perform basic work activities was accounted for in the RFC findings (R. at 11).  The RFC findings did not include any mental limitations (R. at 12).  The ALJ found that plaintiff's nonsevere mental impairments do not result in any mental limitations.  The ALJ noted that plaintiff's ADD and depression are well controlled on medication, and that she cares for two young children at home.  The ALJ stated that these facts weight against a finding that plaintiff's ability to work is limited by mental impairments (R. at 15).  As noted above, Dr. Kovach stated in 2009 that, with medication for ADD, plaintiff has no significant problems at work,[2] and that depression has not kept her from working.  She also noted that plaintiff is able to understand and follow simple instructions, and that her memory, judgment, and problem-solving are normal.  Dr. Kovach further opined that past history shows that plaintiff has good reliability as well as consistency and good ability to get along with others in the work place (R. at 526).

The court will not reweigh the evidence or substitute its

---

[2]Although Dr. Kovach had previously indicated that plaintiff's ADD was "partially" controlled with medication, Dr. Kovach went on to state that "with medication for ADD she has no significant problems at work" (R. at 526).

15

judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). On these facts, and in light of the medical opinion evidence regarding plaintiff's mental impairments from four medical sources, the court finds that an ALJ could reasonably conclude that plaintiff does not have any severe mental impairments.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 25th day of January 2012, Topeka, Kansas.


                         s/ Sam A. Crow
                         Sam A. Crow, U.S. District Senior Judge